# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF WASHINGTON

MICHAEL MAHONEY AND TAMMY MAHONEY, individually and on behalf of all others similarly situated,

               Plaintiffs,

v.

WESTERN WASHINGTON MEDICAL GROUP, INC., P.S.,

               Defendant.

Case No. 2:23-cv-01898

**CLASS ACTION COMPLAINT**

**JURY DEMAND**

Plaintiffs, Michael Mahoney and Tammy Mahoney ("Plaintiffs"), individually and on behalf of all others similarly situated ("Class Members"), bring this class action suit against Defendant Western Washington Medical Group, Inc., P.S. ("Defendant" or "WWMG"), for its failure to properly secure and safeguard Plaintiffs' and Class Members' protected health information ("PHI") and personally identifiable information ("PII") (collectively "Private Information"). Plaintiffs allege and state as follows:

## I.    INTRODUCTION

1.    This class action is brought against Defendant for its failure to implement reasonable industry standard data security and properly secure and safeguard Plaintiffs' and Class Members' protected health information ("PHI") and personally identifiable information ("PII")

CLASS ACTION COMPLAINT – 1

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

(collectively "Private Information"), including first and last names, addresses, Social Security numbers, dates of birth, medical record numbers, health insurance policy numbers, and information about Plaintiffs' and Class Members' medical history, mental or physical condition, or medical diagnosis or treatment (referred to as the "Data Breach").

2.     Defendant is a group comprising over 100 medical providers in Western Washington State.

3.     Defendant acquired, collected, and stored Plaintiffs' and Class Members' Private Information.

4.     On or around August 26, 2023, unauthorized third-party cybercriminals infiltrated Defendant's system and gained access to Plaintiffs' and Class Members' Private Information.

5.     The total number of individuals who have had their Private Information exposed due to Defendant's failure to implement appropriate security safeguards is estimated to be in the hundreds of thousands, as Defendant reported to the U.S. Department of Health and Human Services that affected individuals comprised 350,863.[1]

6.     Defendant did not notify Plaintiffs and Class Members of the Data Breach until on or around November 6, 2023. See a copy of a Data Breach Notice ("Notice") as Exhibit 1. Notice was untimely and woefully deficient, failing to provide basic details concerning the Data Breach, including, but not limited to, how unauthorized parties accessed the computer server, whether the information was encrypted or otherwise protected, how and when Defendant learned of the Data Breach, whether the breach was a system-wide breach, whether servers storing information were accessed, and how many people were affected by the Data Breach.

7.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties owed to them and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure and exfiltration.

---

[1] https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf

CLASS ACTION COMPLAINT – 2

8.      Defendant disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or negligently failing to take and implement adequate and reasonable measures to ensure that Plaintiffs' and Class Members' PHI/PII was safeguarded, failing to take available steps to prevent unauthorized disclosure of data, and failing to follow applicable required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use.

9.      As a result, the Private Information of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party that seeks to profit off this disclosure by defrauding Plaintiffs and Class Members in the future.

## II.      THE PARTIES TO THIS COMPLAINT

10.     Plaintiff Michael Mahoney is, and at all times mentioned herein was, a natural person and citizen of the state of Washington.

11.     Plaintiff Tammy Mahoney is, and at all times mentioned herein was, a natural person and citizen of the state of Washington.

12.     Defendant Western Washington Medical Group, Inc., P.S., is a Washington professional service corporation with its principal place of business at 1728 W Marine View Dr., Ste 110, Everett, WA, 98201.

## III.      BASIS FOR JURISDICTION AND VENUE

13.     Jurisdiction is proper in this Court under 28 U.S.C. §1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one class member is a citizen of a state different from Defendant.

14.     Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. §1367.

CLASS ACTION COMPLAINT – 3

15.     Defendant is a resident of this state as it is headquartered in Washington and it routinely conducts business in the state where this district is located.

16.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to the Plaintiffs' claims occurred within this District, and Defendant does business in this Judicial District.

## IV.     FACTUAL ALLEGATIONS

***Defendant's Collection of Plaintiffs' and Class Members' Private Information***

17.     Defendant acquired, collected, and stored and assured reasonable security over Plaintiffs' and Class Members' Private Information.

18.     As a condition of its relationships with Plaintiffs and Class Members, Defendant required Plaintiffs and Class Members to entrust Defendant with highly sensitive and confidential Private Information.

19.     By obtaining, collecting, and storing Plaintiffs' and Class Members' Private Information, Defendant assumed legal and equitable duties and knew or should have known that they were thereafter responsible for protecting Plaintiffs' and Class Members' Private Information from unauthorized disclosure.

20.     In fact, Defendant promises in its Notice of Privacy Practices that it will "maintain the privacy of your health information" and that it "will not disclose your information to others unless you tell us to do so…"[2]

21.     Through its inadequate security practices, Defendant exposed Plaintiffs' and Class members' Private Information for theft and sale on the dark web.

22.     In response to the Data Breach, Defendant contends that it has "reviewed and enhanced out technical safeguards to prevent a similar incident.[3] Though Defendant fails to expand

---

[2]  https://www.wwmedgroup.com/wp-content/uploads/ENT-Notice-of-Privacy-Practices.pdf (last visited Dec. 4, 2023).

[3] https://www.wwmedgroup.com/notice-of-data-security-incident/ (Last visited Dec. 4, 2023)

CLASS ACTION COMPLAINT – 4

on what these alleged "enhancements" are, such enhancements should have been in place before the Data Breach.

23.    Through its Breach Notice, Defendant recognized its own failure to implement safeguards in accordance with its internal policies, state law, and federal law, as well as the actual imminent harm and injury resulting from the Data Breach, insisting that, despite the Data Breach evidencing otherwise, "WWMG takes the privacy and security of information in its possession very seriously," promising that "Data security is one of our highest priorities."3[4].

24.    On information and belief, Defendant has offered twelve months of complimentary credit monitoring services to victims during that time, which does not adequately address the lifelong harm that victims will face following the Data Breach. Indeed, the breach involves Private Information that cannot be changed, such as Social Security numbers.

25.    Even with twelve months of credit monitoring, the risk of identity theft and unauthorized use of Plaintiffs' and Class Members' Private Information is still substantially high. The fraudulent activity resulting from the Data Breach may not come to light for years.

26.    Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiffs' and Class Members' Private Information. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiffs' and the Class's financial accounts.

27.    On information and belief, Defendant failed to adequately train its IT and data security employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over its patients' Private Information. Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information.

***The Healthcare Sector is Particularly Susceptible to Data Breaches.***

---

[4] *Id.*

CLASS ACTION COMPLAINT – 5

28.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare and healthcare adjacent industry preceding the date of the breach.

29.     Defendant was on notice that companies in the healthcare industry are susceptible targets for data breaches.

30.     In light of recent high-profile data breaches at other healthcare and healthcare adjacent companies, Defendant knew or should have known that its electronic records and patients' PHI/PII would be targeted by cybercriminals.

31.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed, a 68% increase from 2020.[5] The 330 reported breaches reported in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.

32.     Defendant was also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare-related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[6]

33.     The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting confidential medical information:

34.     Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of

---

[5]     2021 Data Breach Annual Report, ITRC https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited Dec. 4, 2023).

[6] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 2014), *available at* https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820 (last visited on Dec. 4, 2023).

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.

35. The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach. In 2022, the largest growth in data compromises occurred in the healthcare sector.

36. The number of U.S. data breaches surpassed 1,000 in 2016, a record high and a forty percent increase in the number of data breaches from the previous year. In 2022, 1,802 data compromises were reported that impacted over 422 million victims—marking a 42% increase in the number of victims impacted since 2021. That upward trend continues.

37. Indeed, when compromised, healthcare-related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident … came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[7]

38. Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant itself.

***Defendant Had an Obligation to Adhere to FTC Guidelines***

39. According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. To that end, the FTC has issued numerous guidelines identifying best data security practices that businesses, such as Defendant, should employ to protect against the unlawful exposure of Private Information.

40. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established guidelines for fundamental data security principles and practices for business. The guidelines explain that businesses should:

    a.   protect the sensitive consumer information that they keep;

---

[7] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/ (last visited on October 25, 2023).

CLASS ACTION COMPLAINT – 7

    b.   properly dispose of Private Information that is no longer needed;

    c.   encrypt information stored on computer networks;

    d.   understand their network's vulnerabilities; and

    e.   implement policies to correct security problems.

41.    The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

42.    The FTC recommends that companies not maintain information longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

43.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

44.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers, or in this case, patients' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Had an Obligation to Protect the Stolen Information under HIPAA***

45.    Title II of the Health Insurance Portability and Accountability Act ("HIPAA") contains what are known as the Administration Simplification provisions. See 42 U.S.C. §§ 1301, et seq. These provisions require that HHS rules streamline the standards for handling PHI similar to the data Defendant left unguarded and vulnerable to attack. HHS has subsequently promulgated five rules under the authority of the Administrative Simplification provisions of HIPAA.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 ● FAX 608.509.4423
www.turkestrauss.com

46. Upon information and belief, because Defendant receives, maintains, and handles Private Information from its patients, Defendant qualifies as a business associate within the meaning of 45 C.F.R. § 160.103(3), therefore becoming a custodian of patient PHI.

47. Defendant is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

48. Defendant is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH"). See 42 U.S.C. § 17921, 45 C.F.R. § 160.103.

49. HIPAA's Privacy Rule or Standards for Privacy of Individually Identifiable Health Information establishes national standards for the protection of health information.

50. HIPAA's Privacy Rule or Security Standards for the Protection of Electronic Protected Health Information establishes a national set of security standards for protecting health information that is kept or transferred in electronic form.

51. HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

52. The Data Breach resulted from a combination of insufficiencies that indicate Defendant failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from the Data Breach that Defendant either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiffs' and Class Members' PHI.

53. Plaintiffs' and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

54. 45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

55. 45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

56. Plaintiffs' and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

57. Plaintiffs' and Class Members' unsecured PHI was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

58. Based upon cybersecurity expert Brian Krebs report on the Data, it is reasonably believed that Plaintiffs' and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

59. Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

60. Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

61. Plaintiffs' and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

62. It is reasonable to infer that Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

63.    It should be rebuttably presumed that unsecured PHI acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

64.    After receiving notice that they were victims of the Data Breach (which required the filing of a data breach report in accordance with 45 CFR § 164.408(a)), it is reasonable for recipients of that notice, including Plaintiffs and Class Members in this case, to believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

65.    Defendant's security failures also include, but are not limited to:

66.    Failing to maintain adequate data security systems, practices, and protocols to prevent data loss;

    a.    Failing to mitigate the risks of a data breach and loss of data;

    b.    Failing to ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits" and "protect against any reasonably anticipated threats or hazards to the security or integrity of such information," in violation of 45 C.F.R. § 164.306 (emphasis added).

    c.    Failing to ensure the confidentiality and integrity of electronic protected health information Defendant creates, receives, maintains, and transmits in violation of 45 CFR § 164.306(a)(1);

    d.    Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR § 164.308(a)(1);

    e.    Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR § 164.308(a)(6)(ii);

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

f.  Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR § 164.306(a)(2);

g.  Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR § 164.306(a)(3); and

h.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR § 164.502, et seq.

67.    HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. See 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); see also 42 U.S.C. §17902.

68.    The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, also requires Defendant to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[8]

69.    HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. See 45 C.F.R. § 164.530(e). HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart by the covered entity or its business associate. See 45 C.F.R. § 164.530(f).

---

[8]  Breach Notification Rule, U.S. Dep't of Health & Human Services, https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html (emphasis added) (last visited Dec. 4, 2023).

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

*Value of the Relevant Sensitive Information*

70.    PHI/PII are valuable commodities for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers, and other personal information on several underground internet websites. Numerous sources cite dark web pricing for stolen identity credentials; for example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200[9]; Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web[10]; and other sources report that criminals can also purchase access to entire company data breaches from $999 to $4,995.[11]

71.    Identity thieves can use Private Information, such as that of Plaintiffs and Class Members, which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims—for instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits, or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

72.    Social Security numbers are particularly attractive targets for hackers because they can easily be used to perpetrate identity theft and other highly profitable types of fraud. Moreover, Social Security numbers are difficult to replace, as victims are unable to obtain a new number until the damage is done.

73.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PHI/PII is stolen and when it is used: according to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches: [L]aw enforcement officials told us that in some cases, stolen data might be held for up to a year or more

---

[9] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-darkweb-how-much-it-costs/ (last accessed Dec. 4, 2023).

[10] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec.6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-yourpersonal-information-is-selling-for-on-the-dark-web/ (last accessed Dec. 4, 2023).

[11] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymousbrowsing/in-the-dark/ (last accessed Dec. 4, 2023).

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[12]

74.    As a result of this lag, it can take victims years to spot identity or Private Information theft, giving criminals plenty of time to use that information for cash.

75.    One such example of criminals using Private Information for profit is the development of "Fullz" packages. Cyber-criminals can cross-reference two sources of Private Information to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals. These dossiers are known as "Fullz" packages.

76.    The development of "Fullz" packages means that stolen Private Inforamtion from the Data Breach can easily be used to link and identify it to Plaintiffs and the proposed Class's phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the Private Information stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and the Class, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs' and other members of the proposed Class's stolen Private Information is being misused and that such misuse is fairly traceable to the Data Breach.

77.    Here, Defendant knew of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Plaintiffs' and Class Members' Private Information were stolen, including the significant costs that would be placed on Plaintiffs and Class Members as a result of a breach of this magnitude.

---

[12] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf (last accessed November 27, 2023)

CLASS ACTION COMPLAINT – 14

**Turke & Strauss LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

78.     As detailed above, Defendant is a sophisticated organization with the resources to deploy robust cybersecurity protocols. It knew, or should have known, that the development and use of such protocols were necessary to fulfill its statutory and common law duties to Plaintiffs and Class Members. Therefore, its failure to do so is intentional, willful, reckless and/or grossly negligent.

79.     Defendant's failure to properly notify Plaintiffs and members of the proposed Class of the Data Breach exacerbated Plaintiffs' and Class Members' injuries by depriving them of the earliest ability to take appropriate measures to protect their Private Information and take other necessary steps to mitigate the harm caused by the Data Breach.

80.     As a result of Defendant's failure to prevent the Data Breach, Plaintiffs and Class Members have suffered and will continue to suffer damages, including monetary losses, lost time, anxiety, and emotional distress. They have suffered or are at an increased risk of suffering:

a.   The loss of the opportunity to control how their Private Information is used;

b.   The diminution in value of the Private Information;

c.   The compromise and continuing publication of their Private Information;

d.   Out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud;

e.   Lost opportunity costs and lost wages associated with the time and effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

f.   Delay in receipt of tax refund monies;

g.   Unauthorized use of stolen Private Information; and

h.   The continued risk to their Private Information, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

undertake the appropriate measures to protect the Private Information in their possession.

81.     Defendant disregarded the rights of Plaintiffs and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions; (ii) failing to disclose that they did not have adequately robust security protocols and training practices in place to adequately safeguard Plaintiffs' and Class Members' Private Information; (iii) failing to take standard and reasonably available steps to prevent the Data Breach; (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time; and (v) failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

***Defendant Failed to Follow Industry Standards***

82.     Several best practices have been identified that—at a minimum—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

83.     Other industry-standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

84.     Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

85.    These frameworks are applicable and accepted industry standards. By failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

## V.    CLASS ACTION ALLEGATIONS

86.    Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to rule 23(b)(2), (b)(3), and (c)(4) of the federal Rules of Civil Procedure.

87.    Specifically, Plaintiffs propose the following Nationwide Class and State Subclasses (collectively the "Class" unless otherwise specified), subject to amendment as appropriate:

**<u>Nationwide Class</u>**
**All individuals in the United States who were impacted by the Data Breach, including all who were sent a notice of the Data Breach.**

**<u>Washington Subclass</u>**
**All individuals residing in Washington state who were impacted by the Data Breach, including all who were sent a notice of the Data**

88.    Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers, and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

89.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class and Subclass, and to propose alternative or additional Subclasses before the Court determines whether certification is appropriate.

90.    This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

91.    <u>Numerosity</u>. Fed R. Civ. P. 23(a)(1): The Class Members are so numerous that the joinder of all members is impracticable. Though the exact identities of Class Members are unknown at this time, based on information and belief, the Class consists of roughly 350,000[13]. The identities of Class Members are ascertainable through Defendant's records, Class Members' records, publication notice, self-identification, and other means.

92.    <u>Commonality</u>. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.    Whether Defendant engaged in the conduct alleged herein;

b.    Whether Defendant's conduct violated the FTCA and/or HIPAA;

c.    Whether and to what extent Defendant had a duty to protect the Private Information of Plaintiffs and Class Members;

d.    When Defendant learned of the vulnerability within its network that led to the Data Breach;

e.    Whether Defendant's response to the Data Breach was adequate;

f.    Whether Defendant took reasonable steps and measures to safeguard Plaintiffs' and Class Members' Private Information;

g.    Whether Defendant breached its duty to Plaintiffs and Class Members to safeguard their Private Information;

h.    Whether hackers obtained Plaintiffs' and Class Members' Private Information via the Data Breach;

i.    Whether Defendant knew or should have known that its data monitoring and supervision processes were deficient;

j.    Whether Defendant was aware that its business associates', vendors', and/or suppliers' data security practices, procedures, and protocols were inadequate;

---

[13] https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf

CLASS ACTION COMPLAINT – 18

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

k.   What damages Plaintiffs and Class Members suffered as a result of Defendant's misconduct;

l.   Whether Defendant's conduct was negligent;

m.   Whether Defendant was unjustly enriched;

n.   Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

o.   Whether Plaintiffs and Class Members are entitled to lifetime credit or identity monitoring and monetary relief; and

p.   Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

93.   <u>Typicality</u>. Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through the common misconduct of Defendant. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class Members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of Class Members arise from the same operative facts and are based on the same legal theories.

94.   <u>Adequacy of Representation</u>. Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs have no interests antagonistic to members of the Class. In addition, Plaintiffs' counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

95.   <u>Predominance</u>. Fed. R. Civ. P. 23(b)(3): Defendant has engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' Private Information was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way and as a result of the same negligent acts and omissions committed

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

by Defendant. The common issues arising from Defendant's conduct affecting Plaintiffs and Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

96.    Superiority and Manageability. Fed. R. Civ. P. 23(b)(3): A Class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

97.    The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

98.    Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

99.    Injunctive Relief. Fed. R. Civ. P. 23(b)(2): Defendant has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

100.    Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiffs.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

101.    Unless a Class-wide injunction is issued, Defendant may continue failing to properly secure the PHI/PII of Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

102.    Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

103.    <u>Ascertainability.</u> Finally, all members of the proposed Class are readily ascertainable. Defendant has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Defendant.

## VI.    CLAIMS FOR RELIEF

### <u>COUNT ONE</u>
### Negligence
### (On behalf of the Class)

104.    Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

105.    At all times herein relevant, Defendant owed Plaintiffs and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their Private Information and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing the Private Information of Plaintiffs and Class Members in its computer systems and on its networks.

106.    Among these duties, Defendant was expected:

    a.   to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession;

    b.   to protect Plaintiffs' and Class Members' Private Information using reasonable and adequate security procedures and systems that were/are

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

compliant with industry-standard practices; to implement processes to detect the Data Breach quickly and to timely act on warnings about data breaches; and

c.  to promptly notify Plaintiffs and Class Members of any data breach, security incident, or intrusion that affected or may have affected their Private Information.

107.    Defendant knew that the Private Information was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Plaintiffs and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

108.    Defendant knew, or should have known, of the risks inherent in collecting and storing Private Information, the vulnerabilities of its data security systems, and the importance of adequate security.

109.    Defendant knew about numerous, well-publicized data breaches.

110.    Defendant knew, or should have known, that its data systems and networks did not adequately safeguard Plaintiffs' and Class Members' Private Information.

111.    Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the Private Information that Plaintiffs and Class Members had entrusted to it.

112.    Defendant breached its duties to Plaintiffs and Class Members by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard their Private Information.

113.    Because Defendant knew that a breach of its systems could damage thousands of individuals, including Plaintiffs and Class Members, Defendant had a duty to adequately protect its data systems and the Private Information contained therein.

114.    Plaintiffs' and Class Members' willingness to entrust Defendant with their Private Information was predicated on the understanding that Defendant would take adequate security precautions.

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

115.    Moreover, only Defendant had the ability to protect its systems and the Private Information is stored on them from attack. Thus, Defendant had a special relationship with Plaintiffs and Class Members.

116.    Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Plaintiffs' and Class Members' Private Information and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant, Plaintiffs, and/or the remaining Class Members.

117.    Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant has a duty to provide fair and adequate computer systems and data security practices to safeguard Plaintiffs' and the Class's Private Information.

118.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect customers' Private Information. The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the members of the Class's Private Information.

119.    Defendant breached its duty to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

120.    Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and their patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendant was in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class Members from a Data Breach.

121.    Defendant's duty to use reasonable security measures under HIPAA required Defendant to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530(c)(l). Some or all of the

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

122.    Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above but also because Defendant is bound by industry standards to protect confidential Private Information.

123.    Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiffs' and the Class's Private Information and not complying with applicable industry standards as described in detail herein. Defendant's conduct is particularly unreasonable given the nature and amount of Private Information. Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to a pass.

124.    The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

125.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of Private Information Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

126.    Defendant owed a duty of care to Plaintiffs and members of the Class because it was foreseeable that Defendant's failure to adequately safeguard their Private Information in accordance with state-of-the-art industry standards concerning data security would result in the compromise of that Private Information—just like the Data Breach that ultimately came to pass. Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and the Class's Private Information by disclosing and providing access to this

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

information to unauthorized third parties and by failing to properly supervise both the way the Private Information was stored, used, and exchanged, and those in their employment who were responsible for making that happen.

127.    Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security protocols. Defendant actively sought and obtained Plaintiffs' and the Class's Private Information.

128.    The risk that unauthorized persons would attempt to gain access to the Private Information and misuse it was foreseeable. Given that Defendant holds vast amounts of Private Information, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the Private Information—whether by malware or otherwise.

129.    Private Information is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the Private Information of Plaintiffs and the Class and the importance of exercising reasonable care in handling it.

130.    Defendant breached its duties by failing to exercise reasonable care in supervising its employees, agents, contractors, vendors, and suppliers, and in handling and securing the Private Information of Plaintiffs and the Class which actually and proximately caused the Data Breach and Plaintiffs' and the Class's injury. Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and members of the Class, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and members of the Class's injuries-in-fact. As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and the Class have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

131.    Defendant's willful failure to abide by these duties was wrongful, reckless, and grossly negligent in light of the foreseeable risks and known threats.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

132.    As a proximate and foreseeable result of Defendant's grossly negligent conduct, Plaintiffs and Class Members have suffered damages and are at imminent risk of additional harms and damages.

133.    The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the Private Information to Plaintiffs and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their Private Information.

134.    Defendant breached its duty to notify Plaintiffs and Class Members of the unauthorized access by waiting months after learning of the Data Breach to notify Plaintiffs and Class Members and then by failing and continuing to fail to provide Plaintiffs and Class Members sufficient information regarding the breach.

135.    To date, Defendant has not provided sufficient information to Plaintiffs and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiffs and Class Members.

136.    Further, through its failure to provide timely and clear notification of the Data Breach to Plaintiffs and Class Members, Defendant prevented Plaintiffs and Class Members from taking meaningful, proactive steps to secure their Private Information.

137.    There is a close causal connection between Defendant's failure to implement security measures to protect the Private Information of Plaintiffs and Class Members and the harm suffered, or risk of imminent harm suffered by Plaintiffs and Class Members.

138.    Defendant's wrongful actions, inactions, and omissions constituted (and continue to constitute) common law negligence.

139.    The damages Plaintiffs and Class Members have suffered (as alleged above) and will suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

140.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their Private Information is used; (iii)

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

the compromise, publication, and/or theft of their Private Information; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their Private Information; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to, efforts spent researching how to prevent, detect, contest, and recover from embarrassment and identity theft; (vi) the continued risk to their Private Information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class Members' Private Information in its continued possession; and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members.

141.    As a direct and proximate result of Defendant's negligence and negligence *per se*, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

142.    Additionally, as a direct and proximate result of Defendant's negligence, Plaintiffs and Class Members have suffered and will suffer the continued risks of exposure of their Private Information, which remain in Defendant's possession and are subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the Private in its continued possession.

### COUNT TWO
### Breach of Implied Contract
### (On behalf of the Class)

143.    Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

144.    Through its course of conduct, Defendant, Plaintiffs and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Plaintiffs' and Class Members' Private Information.

145.    Defendant required Plaintiffs and Class Members to provide and entrust their Private Information as a condition of obtaining Defendant's services.

146.    Defendant solicited and invited Plaintiffs and Class Members to provide their Private Information as part of Defendant's regular business practices.

147.    Plaintiffs and Class Members accepted Defendant's offers and provided their Private Information to Defendant.

148.    As a condition of their relationship with Defendant, Plaintiffs and Class Members provided and entrusted their Private Information to Defendant.

149.    In so doing, Plaintiffs and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential, and to timely and accurately notify Plaintiffs and Class Members if their data had been breached and compromised or stolen.

150.    Plaintiffs and Class Members fully performed their obligations under the implied contracts with Defendant.

151.    Defendant breached its implied contracts with Plaintiffs and Class Members by failing to safeguard and protect their Private Information and by failing to provide timely and accurate notice to them that their Private Information was compromised as a result of the Data Breach.

152.    As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and Class Members have suffered (and will continue to suffer) (a) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (b) actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; (c) loss of the confidentiality of the stolen confidential data; the illegal

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

sale of the compromised data on the dark web; (e) lost work time; and (f) other economic and non-economic harm.

### COUNT THREE
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On behalf of the Class)**

153.　Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

154.　Every contract in this State has an implied covenant of good faith and fair dealing, which is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

155.　Plaintiffs and Class Members have complied with and performed all conditions of their contracts with Defendant.

156.　Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private information, failing to timely and accurately disclose the Data Breach to Plaintiffs and Class Members, and continued acceptance of Private Information and storage of other personal information after Defendant knew, or should have known, of the security vulnerabilities of the systems that were exploited in the Data Breach.

157.　Defendant acted in bad faith and/or with malicious motive in denying Plaintiffs and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

### COUNT FOUR
**Unjust Enrichment**
**(On behalf of the Class)**

158.　Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

159.　By its wrongful acts and omissions described herein, Defendant has obtained a benefit by unduly taking advantage of Plaintiffs and Class Members.

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

160.    Defendant, prior to and at the time Plaintiffs and Class Members entrusted their Private Information to Defendant, caused Plaintiffs and Class Members to reasonably believe that Defendant would keep such Private Information secure.

161.    Defendant was aware, or should have been aware, that reasonable patients and consumers would have wanted their Private Information kept secure and would not have contracted with Defendant, directly or indirectly, had they known that Defendant's information systems were substandard for that purpose.

162.    Defendant was also aware that, if the substandard condition of and vulnerabilities in its information systems were disclosed, it would negatively affect Plaintiffs' and Class Members' decisions to seek services therefrom.

163.    Defendant failed to disclose facts pertaining to its substandard information systems, defects, and vulnerabilities therein before Plaintiffs and Class Members made their decisions to make purchases, engage in commerce therewith, and seek services or information.

164.    Instead, Defendant suppressed and concealed such information. By concealing and suppressing that information, Defendant denied Plaintiffs and Class Members the ability to make a rational and informed purchasing and servicing decision and took undue advantage of Plaintiffs and Class Members.

165.    Defendant was unjustly enriched at the expense of Plaintiffs and Class Members, as Defendant received profits, benefits, and compensation, in part, at the expense of Plaintiffs and Class Members; however, Plaintiffs and Class Members did not receive the benefit of their bargain because they paid for products and or services that did not satisfy the purposes for which they bought/sought them.

166.    Since Defendant's profits, benefits, and other compensation were obtained improperly, Defendant is not legally or equitably entitled to retain any of the benefits, compensation or profits it realized from these transactions.

167.    Plaintiffs and Class Members seek an Order of this Court requiring Defendant to refund, disgorge, and pay as restitution any profits, benefits and other compensation obtained by

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

Defendant from its wrongful conduct and/or the establishment of a constructive trust from which Plaintiffs and Class Members may seek restitution.

## COUNT FIVE
## DECLARATORY RELIEF
### (On behalf of the Class)

168. Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

171. Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal and state statutes described in this Complaint.

172. Defendant owed a duty of care to Plaintiffs and Class Members, which required them to adequately monitor and safeguard Plaintiffs' and Class Members' Private Information.

173. Defendant and its associates, vendors, and/or suppliers still possess the Private Information belonging to Plaintiffs and Class Members.

174. Plaintiffs allege that Defendant's data security measures remain inadequate. Furthermore, Plaintiffs and Class Members continue to suffer injury as a result of the compromise of her Private Information and the risk remains that further compromises of her Private Information will occur in the future.

175. Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a. Defendant owed a legal duty to secure its healthcare clients' patients' Private Information under the common law, HIPAA, and the FTC;

    b. Defendant's existing data monitoring measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable data security procedures and practices that are appropriate to protect patients' Private Information; and

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

c.  Defendant continue to breach this legal duty by failing to employ reasonable measures to secure its clients' patients' Private Information.

176.  This Court should also issue corresponding prospective injunctive relief requiring Defendant to employ adequate security protocols consistent with legal and industry standards to protect patients' Private Information, including the following:

a.  Order Defendant to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

b.  Order that, to comply with Defendant's explicit or implicit contractual obligations and duties of care, Defendant must implement and maintain reasonable security and monitoring measures, including, but not limited to:

i.  engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

ii.  engaging third-party security auditors and internal personnel to run automated security monitoring;

iii.  auditing, testing, and training its security personnel regarding any new or modified procedures;

iv.  segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendant's systems;

v.  conducting regular database scanning and security checks;

vi.  routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

TURKE & STRAUSS LLP
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

vii.    meaningfully educating its clients and its clients' patients about the threats they face with regard to the security of their Private Information, as well as the steps that should be taken to protect themselves.

177.    If an injunction is not issued, Plaintiffs will suffer irreparable injury and will lack an adequate legal remedy to prevent another data breach at Defendant. The risk of another such breach is real, immediate, and substantial. If another breach at Defendant occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

178.    The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Plaintiffs will likely be subjected to substantial, continued identity theft and other related damages if an injunction is not issued. On the other hand, the cost of Defendant' compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendant have a pre-existing legal obligation to employ such measures.

179.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendant, thus preventing future injury to Plaintiffs and other patients whose Private Information would be further compromised.

## COUNT SIX
### Violation of the Washington Consumer Protection Act, RCW § 19.86, *et seq.*
### (On behalf of the Class)

169.    Plaintiffs reallege and reincorporate every allegation set forth in the preceding paragraphs as though fully set forth herein.

170.    Defendant is a "person" under the Washington Consumer Protection Act, RCW § 19.86.101(1), and it conducts "trade" and "commerce" under RCW § 19.86.010(2).

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

171.    Plaintiffs and other members of the proposed Class are "persons" under RCW § 19.86.010(1).

172.    Defendant's failure to safeguard the PHI/PII exposed in the Data Breach constitutes an unfair act that offends public policy.

173.    Defendant's failure to safeguard the PHI/PII compromised in the Data Breach caused Plaintiffs and the proposed Class substantial injury. Defendant's failure is not outweighed by any countervailing benefits to consumers or competitors, and it was not reasonably avoidable by consumers.

174.    Defendant's failure to safeguard the Private Information disclosed in the Data Breach, and its failure to give time and complete notice of the Data Breach to victims, is unfair because these acts and practices are immoral, unethical, oppressive, and unscrupulous.

175.    Defendant's unfair acts or practices occurred in its trade or business and have injured and can injure a substantial portion of the public. Defendant's general conduct as alleged injures the public interest, and the acts Plaintiffs complain of are ongoing and have a substantial likelihood of being repeated.

176.    As a direct and proximate result of Defendant's unfair acts or practices, Plaintiffs and the proposed Class suffered an injury in fact.

177.    As a result of Defendant's conduct, Plaintiffs' and members of the Class's actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their Private Information by criminals, improper disclosure of their Private Information, lost benefit of their bargain, lost value of their Private Information, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's conduct, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

178.    Plaintiffs and the proposed Class are entitled to an order enjoining the conduct complained of and ordering Defendant to take remedial measures to prevent similar data breaches;

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

actual damages; treble damages under § 19.86.090; and the costs of bringing this suit, including reasonable attorney fees.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themself and each member of the proposed Class, respectfully request that the Court enter judgment in their favor and for the following specific relief against Defendant as follows:

1. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiffs' counsel as Class Counsel;

2. An order finding in favor of Plaintiffs and Class Members on all counts asserted herein;

3. For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

4. That the Court enjoin Defendant, ordering them to cease from unlawful activities;

5. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and Class Members' Private Information, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiffs and Class Members;

6. For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and Class Members, including but not limited to an Order:

7. For prejudgment interest on all amounts awarded, at the prevailing legal rate; For an award of attorney's fees, costs, and litigation expenses, as allowed by law; and

8. For all other Orders, findings, and determinations identified and sought in this Complaint.

   a. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

CLASS ACTION COMPLAINT – 35

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

b.  requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards, and federal, state, or local laws;

c.  requiring Defendant to delete and purge the Private Information of Plaintiffs and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and Class Members;

d.  requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Plaintiffs' and Class Members' Private Information;

e.  requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests, and audits on Defendant's systems periodically;

f.  prohibiting Defendant from maintaining Plaintiffs' and Class Members' Private Information on a cloud-based database;

g.   requiring Defendant to segment data by creating firewalls and access controls so that, if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h.  requiring Defendant to conduct regular database scanning and securing checks;

i.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Plaintiffs and Class Members;

j.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees'

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com

compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

k. requiring Defendant to implement, maintain, review, and revise as necessary a threat management program to monitor Defendant's networks for internal and external threats appropriately, and assess whether monitoring tools are properly configured, tested, and updated; and

l. requiring Defendant to meaningfully educate all Class Members about the threats they face due to the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

## <u>JURY DEMAND</u>

Plaintiffs, individually and on behalf of the Class, hereby demands a trial by jury for all issues triable by jury.

Dated: December 11, 2023     By: */s/ Samuel J. Strauss*
Samuel J. Strauss, WSBA #46971
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (608) 509 4423
sam@turkestrauss.com

William B. Federman (*pro hac vice* anticipated)
FEDERMAN & SHERWOOD
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
wbf@federmanlaw.com

*Attorneys for Plaintiff and the Proposed Class*

**TURKE & STRAUSS LLP**
613 Williamson Street, Suite 201
Madison, Wisconsin 53703-3515
TEL. 608.237.1775 • FAX 608.509.4423
www.turkestrauss.com